678 S.E.2d 435

James O. GRANT, Individually and as Personal Representative of the Estate of Lessie Mae P. Grant, Respondent,

v.

MAGNOLIA MANOR–GREENWOOD, INC.; THI of South Carolina at Greenwood, LLC; THI of South Carolina, LLC; THI of Baltimore Management, Inc.; THI Holdings, LLC; Trans Healthcare, Inc; ABE Briarwood Corporation; and Jane Doe 1–10, Appellants.

No. 26668.

Supreme Court of South Carolina.

Heard Jan. 8, 2009.

Decided June 15, 2009.

Rehearing Denied July 9, 2009.

Perry D. Boulier and Ginger D. Goforth, both of Holcombe Bomar, of Spartanburg, for appellants.

Fred Thompson, III and Kimberly D. Barone, both of Motley Rice, LLC, of Mount Pleasant, for respondent.

Chief Justice TOAL:

In this case, the circuit court denied Appellants' motion to enforce arbitration on the grounds that the designated arbitrator had become unavailable and that the unavailability voided the arbitration agreement. Appellants appealed, and we certified this case pursuant to Rule 204(b), SCACR.

### FACTUAL/PROCEDURAL BACKGROUND

Respondent James O. Grant ("Respondent") is the surviving husband of Lessie Mae P. Grant ("Grant") and the personal representative of her estate. On December 4, 2003, at the age of 72, Grant was admitted to the Magnolia Manor–Greenwood nursing home. Upon admission, Respondent executed an admission contract as a "fiduciary party" on behalf of Grant, who was unable to sign the contract herself. The admission contract contained an arbitration provision, which states as follows:

## VI: Arbitration

Pursuant to the Federal Arbitration Act, any action, dispute, claim, or controversy of any kind (*e.g.*, whether in contract or in tort, statutory or common law, legal or equitable, or otherwise) now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of health care services, any agreement between the parties, the provision of any other goods or service by the Health Care Center or other transactions, contracts or agreements of any kind whatsoever, any past, present, or future incidents, omission, acts errors, practices, or occurrence causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, or any other aspect of the past, present, or future relationships between the parties shall be resolved by binding arbitration administered by the National Health Lawyers Association (the "NHLA").[1]

On January 1, 2004, the AHLA amended its rules for arbitrating health care liability claims. Under the new rules, the AHLA would only arbitrate claims pursuant to arbitration agreements entered into after the alleged injury occurred. The parties did not modify the admission contract to reflect the AHLA policy change.

On January 11, 2005, Grant fell and sustained a large hematoma above her left eye. Five days later, Grant died as a result of this injury. Respondent instituted this action against Appellants for survival, wrongful death, and loss of consortium.

Appellants filed a motion to enforce arbitration and stay the proceedings. Respondent contested Appellants' motion on the grounds that the AHLA no longer arbitrated personal injury claims arising under pre-injury arbitration agreements and that the arbitration clause was therefore unenforceable. Appellants argued in reply that Section 5 of the Federal Arbitration Act ("FAA") allowed for the appointment of a replacement arbitrator when the designated arbitrator became unavailable. Following oral arguments, the circuit court entered

---

1. The NHLA has since become the American Health Lawyers Association (the "AHLA") and hereinafter will be referred to by that name.

an order denying Appellants' motion to enforce arbitration and stay the proceedings. In reviewing the arbitration agreement, the circuit court found that the AHLA had become unavailable as an arbitrator, found that the designation of the AHLA as arbitrator was a material term of the agreement, and declined to appoint a new arbitrator because "there would no longer be a meeting of the minds between the parties." Appellants present the following questions for review:

I. Did the circuit court err in finding the arbitration agreement void and unenforceable because of the unavailability of the designated arbitrator?

II. Did the circuit court err in failing to appoint a substitute arbitrator or in failing to allow the parties to consent to a substitute arbitrator in accordance with Section 5 of the Federal Arbitration Act?

## STANDARD OF REVIEW

Determinations of arbitrability are subject to *de novo* review. *Stokes v. Metropolitan Life Ins. Co.*, 351 S.C. 606, 609, 571 S.E.2d 711, 713 (Ct.App.2002). However, the circuit court's factual findings will not be overruled if there is any evidence reasonably supporting them. *Liberty Builders, Inc. v. Horton*, 336 S.C. 658, 664–665, 521 S.E.2d 749, 753 (Ct.App. 1999).

## LAW/ANALYSIS

Appellants argue that the circuit court erred in denying their motion to enforce arbitration due to the AHLA's unavailability to act as arbitrator. We disagree.

We observe at the outset that it is the policy of this state to favor the arbitration of disputes. *Toler's Cove Homeowners Ass'n, Inc. v. Trident Const. Co., Inc.*, 355 S.C. 605, 612, 586 S.E.2d 581, 585 (2003). Accordingly, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 597, 553 S.E.2d 110, 118 (2001). A motion to compel arbitration made pursuant to an arbitration clause in a written contract should only be denied where the clause is not susceptible to any interpretation which would cover the asserted dispute. *Id.* at 597, 553 S.E.2d at 118–119.

Nevertheless, arbitration is a matter of contract, and our evaluation of the enforceability of an arbitration agreement is guided by general principles of contract law. *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 538, 542 S.E.2d 360, 364 (2001). The parties to an arbitration agreement are at liberty to choose the terms under which they will arbitrate. *Dowling v. Home Buyers Warranty Corp., II,* 311 S.C. 233, 236, 428 S.E.2d 709, 710 (1993). In order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to all essential and material terms of the contract. *Player v. Chandler,* 299 S.C. 101, 105, 382 S.E.2d 891 (1989).

The parties' arbitration agreement provides that the arbitration shall be administered pursuant to the FAA. Section 5 of the FAA states in part:

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein. . . .

9 U.S.C. § 5 (2007).

Appellants argue that the unavailability of AHLA has created a "lapse ... in filling a vacancy" that Section 5 was designed to remedy. We disagree.

There is a dispute in the case law as to whether Section 5 applies in cases where, as here, the parties have specified an exclusive arbitral forum, but that forum is no longer available. Some courts, particularly the United States Court of Appeals for the Second Circuit, have held that Section 5 does not apply in such instances. *See In re Salomon Inc. S'holders' Derivative Litig.,* 68 F.3d 554, 560 (2d Cir.1995) (defining the term "lapse" in Section 5 to mean "a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbi-

trator selection process" and holding that Section 5 is therefore inapplicable to cases where the specifically designated arbitrator becomes unavailable); *Dover Ltd. v. A.B. Watley, Inc.,* No. 04–7366, 2006 WL 2987054, *6 (S.D.N.Y. Oct.18, 2006) (recognizing that "Section 5 . . . is inapplicable when the parties have specified an exclusive arbitral forum, but that forum is no longer available").

Other jurisdictions have interpreted Section 5 so as to generally allow for the appointment of new arbitrators when the named arbitrator could not or would not proceed. *See Ex parte Warren,* 718 So.2d 45, 48 (Ala.1998) (expressing the general rule that, "where the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement but instead appoints a different arbitrator."); *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 742 F.Supp. 1359, 1364 (N.D.Ill.1990) (same). However, these cases have also identified an exception to this rule, which provides that "[o]nly if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' will the failure of the chosen forum preclude arbitration." *Brown v. ITT Consumer Fin. Corp.,* 211 F.3d 1217, 1220 (11th Cir.2000). Importantly, "[n]one of these cases . . . stand for the proposition that district courts may use § 5 to circumvent the parties' designation of an exclusive arbitral forum." *In re Salomon Inc.,* 68 F.3d at 561.

We see great merit in the Second Circuit's view that Section 5 does not apply in cases where a specifically designated arbitrator becomes unavailable. However, we may assume without deciding that Section 5 applies in the present case and reach the same result because, in our view, the specific designation of the AHLA as arbitrator is an integral term of this arbitration agreement.

To determine whether a named arbitrator is an integral part of the agreement or an ancillary logistical concern, courts look to the "essence" of the arbitration agreement. *Warren,* 718 So.2d at 49 (citing *Zechman,* 742 F.Supp. at 1364). Under the AHLA policy, the parties may not vary the rules on communications, service, counting of days, publication and form of the award, release of documents, or administration. The parties are bound by a panel of arbitrators

selected by the service. In our view, the parties' waiver of this set of rights in agreeing to arbitrate before the AHLA reflects their specific intent to arbitrate *exclusively* before that body. Furthermore, the designation of a forum such as the AHLA "has wide-ranging substantive implications that may affect, *inter alia*, the arbitrator-selection process, the law, procedures, and rules that govern the arbitration, the enforcement of the arbitral award, and the cost of the arbitration." *Singleton v. Grade A Market, Inc.*, 607 F.Supp.2d 333, 339 (D.Conn. 2009). Where designation of a specific arbitral forum has implications that may substantially affect the substantive outcome of the resolution, we believe that it is neither "logistical" nor "ancillary." *See Smith Barney, Inc. v. Critical Health Systems of North Carolina, Inc.*, 212 F.3d 858, 862 (4th Cir.2000) ("It is far better to interpret the agreement based on what is specified, rather than attempt to incorporate other remote rules by reference."); *Wall Street Associates v. Becker Paribas, Inc.* 818 F.Supp. 679, 683 (S.D.N.Y.1993), affd. 27 F.3d 845 (2d Cir.1994) ("[A]n agreement to arbitrate before a particular forum is as integral a term of a contract as any other, which courts must enforce."). Accordingly, we hold that the arbitration agreement is unenforceable and that the circuit court did not err in refusing to appoint a substitute arbitrator pursuant to Section 5.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court and remand for further proceedings.

WALLER, BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., concurring in result.