# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 6, 2012 Session

## MARY ANN CAUDLE, NEXT OF KIN AND CO-EXECUTOR OF ESTATE OF LOUISE K. FITE, DECEASED, AND ON BEHALF OF WRONGFUL DEATH BENEFICIARIES OF LOUISE K. FITE
### v.
## COLUMBIA OPERATIONS, LLC D/B/A LIFE CARE CENTERS OF COLUMBIA AND LIFE CARE CENTERS OF AMERICA, INC.

Appeal from the Maury County Circuit Court
No. 13505    Robert Lee Holloway, Jr., Judge

No. M2011-02194-COA-R9-CV - Filed August 27, 2012

This is an interlocutory appeal from a trial court's grant of a motion to compel arbitration. The mother executed a power of attorney in favor of the plaintiff daughter. Subsequently, the daughter signed documents on her mother's behalf for admission into the defendant nursing home. The documents included an agreement to arbitrate any disputes with the nursing home. After the mother died, the daughter filed this wrongful death lawsuit against the nursing home. The nursing home filed a motion to stay the lawsuit and compel arbitration; this motion was granted. The daughter was then granted permission for this interlocutory appeal, on the issue of whether the power of attorney gave the daughter authority to sign the arbitration agreement and waive her mother's right to a jury trial. Interpreting the language in the power of attorney document, we find that the daughter had authority to execute the nursing home admission documents, including the arbitration agreement, only if, in the opinion of her physician, the mother was "incompetent or incapable of action" for herself. Therefore, we reverse and remand for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Cameron C. Jehl, Carey L. Acerra, and Deborah Truby Riordan, Memphis, Tennessee for Plaintiff/Appellant Mary Ann Caudle, next of kin and co-executor of estate of Louise K. Fite, deceased, and on behalf of the wrongful death beneficiaries of Louise K. Fite

John Barry Burgess and Marc A. Sorin, Memphis, Tennessee for Defendant/Appellees Columbia Operations, LLC d/b/a Life Care Center of Columbia and Life Care Centers of America, Inc.

## OPINION

### FACTS AND PROCEEDINGS BELOW

In November 2002, Louise K. Fite ("Fite") executed a durable power of attorney ("POA") naming her daughter, Plaintiff/Appellant Mary Ann Caudle ("Caudle"), as her attorney in fact. The form for the POA was apparently provided to Caudle and Fite by a local bank. The POA stated that Caudle was appointed as Fite's attorney-in-fact under the Uniform Durable Power of Attorney Act, Tennessee Code Annotated § 34-6-101, *et seq*. Paragraph 1 of the POA stated:

> This power of attorney shall not be affected by my subsequent disability or incapacity. I intend for the authority conferred on my attorney-in-fact herein to be exercisable by them [sic] notwithstanding any such disability or incapacity.

Paragraph 2 of the POA, delineating Caudle's powers as Fite's attorney-in-fact, included a provision on Fite's medical care. It stated that Caudle had the following authority:

> To contract for my entry into, maintenance at, or release from any hospital, convalescent center, nursing home, or other health care facility, including the authority to approve or disapprove any proposed medical treatment to the extent that I am, in the opinion of my treating physician, incompetent or incapable of acting for myself.

The POA was signed by Fite and duly notarized.

On August 4, 2005, Caudle sought to have her mother admitted to a residential nursing home facility in Maury County, Tennessee, Defendant/Appellees Columbia Operations, LLC, doing business under the name Life Care Center of Columbia and Life Care Centers of America, Inc. ("Life Care"). The documents Caudle executed in connection with Fite's admission into Life Care included a "Voluntary Agreement for Arbitration" ("arbitration agreement"). The

arbitration agreement waived Fite's right to a jury trial in the event of a dispute with Life Care and obligated Fite and her agents or representatives to arbitrate any such dispute. It provided that the arbitrators for any arbitration would be selected from the American Arbitration Association ("AAA") and that the arbitrators would apply the rules of procedure of the AAA.

Fite lived at the Life Care nursing home for over four years. She died at the facility in October 2009.

In August 2010, Caudle, in her capacity as Fite's next of kin and co-executor of Fite's estate, filed the instant lawsuit against Life Care in the Circuit Court at Columbia, Maury County, Tennessee. The complaint alleged that Fite suffered numerous serious injuries, and eventually death, due to the negligent and intentional conduct of Life Care. The complaint sought monetary damages based on several tort theories, including wrongful death, as well as breach of contract and violations of various statutes.

In response, Life Care filed a motion to compel arbitration and stay the lawsuit, citing the arbitration agreement signed by Caudle as part of Fite's admission documents. The trial court permitted discovery only on the enforceability of the arbitration agreement.

Caudle filed a response to Life Care's motion to compel arbitration. Caudle's response argued, *inter alia*, that the POA did not grant her the authority to execute the arbitration agreement unless Fite's treating physician had deemed Fite incompetent, and that this was not done. Caudle also contended that the arbitration agreement was not enforceable because the AAA had announced that it would no longer accept patient disputes absent a post-dispute arbitration agreement. Caudle argued that this amounted to failure of an integral term of the contract.

In August 2011, the trial court held a hearing on Life Care's motion to compel arbitration. Several arguments were made by both parties, but the discussion between the trial court and the attorneys focused on interpretation of the POA. Specifically, the exchange centered on whether the phrase in Paragraph 2, authorizing Caudle to act to the extent that Fite had been deemed incompetent by her physician, conditioned Caudle's authority as to medical care only, or whether it also was a condition to Caudle's authority to execute the nursing home admission documents, including the arbitration agreement.

A few days after the hearing, the trial court entered an order granting Life Care's motion to stay the proceedings and compel arbitration. The order stated that the issue before the trial court was whether Caudle "had the power under the [POA] to sign the Arbitration Agreement

-3-

for Ms. Fite." After reviewing applicable statutes, the trial court issued findings pertinent to the stated issue:

> 1. Ms. Caudle was designated as legal representative in the Arbitration Agreement.
> 2. At the time she executed the Arbitration Agreement she was attorney-in-fact for Ms. Fite under the [POA] executed on November 19, 2002 by Ms. Fite before a Notary Public.
> 3. The [POA] contains the words "[T]his power of attorney shall not be affected by subsequent disability or incapacity" as required by § 34-6-102.
> 4. Paragraph 2.d. of the [POA] authorized the attorney-in-fact to "contract for (Ms. Fite's) entry into, maintenance at, or release from any hospital, convalescent center, nursing home, or other health care facility . . ."
> 5. Paragraph 2.d. of the [POA] authorized the attorney-in-fact "to approve or disapprove any proposed medical treatment to the extent that (Ms. Fite is), in the opinion of my treating physician, incompetent or incapable of acting for (herself)."
> 6. Health care is a broader term than medical care pursuant to § 34-6-201, the definition section of the chapter dealing with durable power of attorney for health care.
> 7. Medical care as defined in § 32-11-103(5) is specifically included in the definition of health care in § 34-6-201(2).
> 8. Ms. Fite conferred on Ms. Caudle the power upon the execution of the [POA], which power was not revoked by any subsequent disability of Ms. Fite, to make health care decisions concerning entry into, maintenance at, or release from Life Care of Columbia.
> 9. Ms. Fite did not confer to Ms. Caudle the power to make decisions concerning her medical care as defined in § 32-11-103(5) until she was "in the opinion of (her) treating physician, incompetent or incapable of action for (herself)."

After reciting these findings, the order granted the motion to stay the proceedings and compel arbitration.

Upon issuance of the order compelling arbitration, Caudle filed a motion to lift the stay and for permission for an interlocutory appeal of the order. Caudle's motion argued first that the trial court had not correctly construed the POA, contending that Caudle's authority to execute documents to admit Fite into a nursing home was conditioned on a determination by Fite's physician that Fite was incompetent. Because no such determination was made, Caudle

insisted, the POA did not authorize Caudle to execute the arbitration agreement. Caudle sought permission for an interlocutory appeal on this issue.

Caudle's motion for permission to appeal also noted that the trial court did not rule on Caudle's contention that there was a fatal failure of an integral term of the arbitration agreement, in that the arbitration could not be conducted by AAA arbitrators or in accordance with AAA procedures because the AAA no longer accepted such cases. Caudle sought permission for an interlocutory appeal of this issue as well.

On October 4, 2011, the trial court issued an order lifting the stay and granting Caudle permission for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The issue on which the trial court granted permission to appeal was stated as follows:

> The issue on appeal should involve interpreting a one page durable power of attorney to determine if the attorney-in-fact for the deceased had the authority to waive a trial by jury by executing a "Voluntary Agreement for Arbitration". Two paragraphs of the durable power of attorney are at the heart of the issue.
>
> Paragraph 1.b. states:
>
>> This power of attorney shall not be affected by subsequent disability or incapacity. I intend for the authority conferred on my attorney-in-fact herein to be exercisable by them notwithstanding any such disability or incapacity.
>
> Paragraph 2.a. states:
>
>> To contract for my entry into, maintenance at, or release from any hospital, convalescent center, nursing home, or other health care facility, including the authority to approve or disapprove any proposed medical treatment to the extent that I am, in the opinion of my treating physician, incompetent or incapable of acting for myself.

On this basis, the trial court granted Caudle permission to appeal. Subsequently, this Court also granted Caudle's application for permission to appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Caudle lists two issues in the Statement of the Issues in her brief. First, she argues that the trial court erred in construing the durable power of attorney as vesting authority in the agent to optionally waive the principal's right to trial by jury when the power of attorney contained no provision contemplating such an exercise of authority. Second, she contends that the designation of a sole arbitral forum in the arbitration agreement constitutes an integral term, the failure of which renders enforcement of the agreement impossible.

Though stated differently, Life Care lists the same two issues on appeal. Life Care asserts that the first issue on appeal is whether the POA vested Caudle with the authority to execute the arbitration agreement. The second issue stated by Life Care is whether the arbitration agreement's designation of a single arbitration forum distinguishes it from the arbitration agreement found enforceable in *Owens v. National Health Corp.*, 263 S.W.3d 876 (Tenn. 2007).

"Issues raised by an interlocutory or extraordinary appeal, after permission to appeal has been granted, are decided in the same manner as if the issues had been raised in an appeal as of right." *State v. Strode*, 232 S.W.3d 1, 8 (Tenn. 2007) (quoting *State v. Moore*, 775 S.W.2d 372, 374 (Tenn. Crim. App. 1989)). The issues argued by the parties concern questions of law, for which our review is *de novo*, with no presumption of correctness. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 28-29 (Tenn. 1996); *Fontaine v. Weekley Homes, L.P.*, No. M2002-01651-COA-R3-CV, 2003 WL 21946721, at *1; 2003 Tenn. App. LEXIS 571, at *3 (Tenn. Ct. App. Aug. 13, 2003) (citing *Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn. 2000)).

## ANALYSIS

Under Rule 9 of the Tennessee Rules of Appellate Procedure, we are limited on appeal to the questions certified by the trial court in its order granting permission for an interlocutory appeal and those certified in this Court's order granting the appeal. *In re Bridgestone/Firestone*, 286 S.W.3d 898, 902 (Tenn. Ct. App. 2008) (citing *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000)). In the case at bar, we interpret the trial court's order as granting permission to appeal only on the interpretation of the POA, *i.e.*, whether Caudle had authority under the POA to execute the arbitration agreement. Both parties argue other issues in their appellate briefs and did so in oral argument on appeal. However, the issues presented to us in this appeal are circumscribed by the trial court's order granting permission for the appeal.

## *Authority Under POA*

On appeal, Caudle argues that the trial court erroneously interpreted Paragraph 2.d. of the POA.  Caudle contends that the trial court construed the phrase "to the extent that I am, in the opinion of my treating physician, incompetent or incapable of acting for myself" as limiting only Caudle's authority to approve or disapprove proposed medical treatment for Fite. Caudle contends that the phrase is intended to limit all of the powers listed in Paragraph 2.d., including the authority to "contract for [Fite's] entry into . . . any . . . nursing home . . . ."  As such, Caudle asserts, the POA did not authorize her to execute the arbitration agreement at issue.

In response, Life Care argues that the only reasonable interpretation of Paragraph 2.d. of the POA is that the condition precedent applies only to decisions regarding proposed medical treatment.  Life Care notes that the POA references the Tennessee Uniform Durable Power of Attorney Act, Tennessee Code Annotated § 34-6-109, which indicates that an attorney-in-fact may be granted broad authority.  Life Care also relies on the Supreme Court's analysis in ***Tenn. Farmers Life Reassurance Co. v. Rose***, 239 S.W.3d 743, 746-47 (Tenn.  2007).

Our research indicates that the issue presented in this appeal was decided by this Court in a previous case, ***Wilson v. Americare Systems, Inc.***, No. M2008-00419-COA-R3-CV, 2009 WL 890870; 2009 Tenn App. LEXIS 277 (Tenn. Ct. App. Mar. 31, 2009).[1]  In ***Wilson***, a mother executed a power of attorney in favor of her daughter.  ***Wilson***, 2009 WL 890870, at *2.  The daughter signed documents to have her mother admitted to the defendant nursing home, including an arbitration agreement.  ***Id.*** at *1.  After the mother died, the daughter filed suit against the nursing home.  ***Id.***  The defendant nursing home filed a motion to compel arbitration, which was denied.  ***Id.*** at *3.  The nursing home appealed.

On appeal, this Court was presented with the issue of whether the daughter had authority under the power of attorney to execute the arbitration agreement.  ***Id.*** at *4.  As it so happens, the power of attorney at issue in ***Wilson*** contained language virtually identical to the

---

[1]This case is not among those listed by the parties in their appellate briefs and, from our review of the record, was apparently not cited to the trial court.

language in Paragraph 2.d. of the POA in the instant case.[2]  *Id.* at *2.  Interpreting that language, the appellate court stated:

> The power of attorney executed by [the decedent mother] authorized [the daughter] to make medical decisions for [the mother] but specifically conditioned that authority on the opinion of a licensed physician that she was incompetent or incapable of acting for herself.  There simply is no evidence in this record that [the decedent mother] was either incompetent or incapable of acting for herself.

*Id.* at *4 (citing ***Hendrix v. Life Care Centers of Am., Inc.***, No. E2006-02288-COA-R3-CV, 2007 WL 5423876, at *14; 2007 Tenn. App. LEXIS 791 (Tenn. Ct. App. Dec. 21, 2007)). On this basis, the appellate court in ***Wilson*** held that the defendant nursing home "failed to establish [the daughter] had the authority to sign" the nursing home admission documents for her mother.  *Id.* at *5.  It then held: "Thus, we hold the record fails to establish there was a valid arbitration agreement for the trial court to enforce."  *Id.*

The first part of the ***Wilson*** Court's discussion of the language at issue references the condition precedent as applying to the daughter's authority "to make medical decisions" for her mother.  However, it is apparent that the ***Wilson*** Court construed the condition as limiting the daughter's authority to execute the nursing home admission documents, including the arbitration agreement, since the ***Wilson*** Court concluded that the daughter was not authorized to sign the agreement.  ***See also Wise v. Heritage Assisted Living Facility***, No. E2008-02710-COA-R3-CV, 2009 WL 2877427, at *7 (Tenn. Ct. App. Sept. 9, 2009) (holding that the power of the attorney-in-fact to sign an arbitration agreement was ineffective "[w]ithout a finding of incompetency by a physician," based on the language of the power of attorney at issue).

---

[2] The pertinent provision in the POA in ***Wilson*** stated:

> 1. Medical Care.  To contract for my entry into and maintenance in, or release from, any hospital, convalescent center, nursing home, or other type of heath care center, including the authority to approve and give consent to any type of surgery or other medical treatment, should I at any time in the opinion of a licensed physician be incompetent or incapable of acting for myself.

***Wilson***, 2009 WL 890870, at *2.

We see no reason to disagree with the ***Wilson*** Court's interpretation of the language at issue in the POA.[3]  On this basis, we hold that Caudle's authority to contract for Fite's entry into and maintenance at Life Care, including her authority to execute the arbitration agreement, was subject to the condition precedent that Fite was "in the opinion of [her] treating physician, incompetent or incapable of acting for [her]self."

On appeal, Life Care argues that the record shows that Fite was in fact incompetent when the arbitration agreement was signed.  The trial court made no finding of fact on this question and it is beyond the purview of the question certified for appeal by the trial court.  Therefore, we decline to address it.

Accordingly, the trial court's order compelling arbitration on the basis of the arbitration agreement must be vacated and the cause remanded for further proceedings.

As noted above, the trial court did not expressly address the enforceability of the arbitration agreement in light of the AAA's decision not to take such cases.  On remand, if the trial court determines that the condition precedent in Paragraph 2.d. was not met, this issue becomes moot.  If not, we note that some courts in our sister states have held that the AAA's decision to decline to take cases involving pre-dispute arbitration agreements amounts to a failure of an integral term of the contract.  ***See Covenant Health & Rehabilitation of Picayune, LP v. Moulds***, 14 So.3d 695, 707 (Miss. 2009) (observing that no other state court had held that an arbitration may go forward if the arbitration agreement requires AAA administration); ***Grant v. Magnolia Manor-Greenwood, Inc.,*** 678 S.E.2d 435, 439 (S.C. 2009) (holding that if the designation of forum in an arbitration clause "has wide-ranging substantive implications that may affect, *inter alia*, the arbitrator-selection process, the law, procedures, and rules that govern the arbitration, the enforcement of the arbitral award, and the cost of the arbitration," then the designation of forum should be considered an essential term). These cases should be examined, as well as the decision of Tennessee's Supreme Court in ***Owens v. National Health Corp.***, in light of the particular language in this arbitration agreement. ***Owens v. National Health Corp.***, 263 S.W.3d 876, 886 (Tenn. 2007) (holding that there was

---

[3]After determining that the defendant nursing home failed to establish they were entitled to enforce the arbitration agreement, we acknowledge that other issues in ***Wilson*** were vacated and remanded for an evidentiary hearing.  Subsequently, a jury trial was held and the nursing home appealed the jury verdict. ***Wilson v. Americare Sys, Inc.***, No. M2011- 00240-COA-R3-CV, 2012 WL 32106, at *1; 2012 Tenn. App. LEXIS 7, at *1 (Tenn. Ct. App. Jan. 5, 2012) (hereinafter "***Wilson II***").  This Court then reversed, finding no material evidence to support trial court's acceptance of the jury verdict. ***Wilson II,*** 2012 WL 32106, at *9; 2012 Tenn. App. LEXIS 7, at *23-24.  In response, the daughter applied for permission to appeal to the Supreme Court which was granted on April 11, 2012. ***Wilson v. Americare Sys.***, No. M2011-00240-SC-R11-CV, 2012 Tenn. LEXIS 249, at *1 (Tenn. Apr. 11, 2012).  Our analysis in the current case is not affected by the issues addressed in these subsequent appeals.

no factual basis for concluding that the two forums designated in the contract were so material as to render the agreement unenforceable, based on only one of the two designated forums being unavailable).

## CONCLUSION

The decision of the trial court is vacated and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are assessed against Appellees Columbia Operations, LLC d/b/a Life Care Centers of Columbia and Life Care Centers of America, Inc., for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE