# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Robert F. Berry, Respondent,

v.

Scott A. Spang, Wells Fargo Clearing Services, LLC, f/k/a Wells Fargo Advisors, LLC, Wachovia Securities Financial Holdings, LLC, Wells Fargo & Company, and Wells Fargo Bank, N.A., Appellants.

Appellate Case No. 2017-001690

———

Appeal from Lexington County
G. Thomas Cooper, Jr., Circuit Court Judge

———

Opinion No. 5792
Submitted June 1, 2020 – Filed January 13, 2021

———

## AFFIRMED

———

Sarah Patrick Spruill, of Haynsworth Sinkler Boyd, PA, of Greenville; Adam Noah Yount and Pierce Talmadge MacLennan, both of Haynsworth Sinkler Boyd, PA, of Charleston; and Frederick T. Smith, of Charlotte, North Carolina, for Appellants.

Mitchell Willoughby, Elizabeth Ann Zeck, and Chad Nicholas Johnston, all of Willoughby & Hoefer, PA, of Columbia, for Respondent.

———

**LOCKEMY, C.J.:** Scott A. Spang, Wells Fargo Clearing Services, LLC, f/k/a Wells Fargo Advisors, LLC, Wachovia Securities Financial Holdings, LLC, Wells

Fargo & Company, and Wells Fargo Bank, N.A. (collectively, Appellants) appeal the circuit court's denial of their motion to dismiss and compel arbitration of Robert F. Berry's claims. Appellants argue the circuit court erred by (1) denying their motion to reconsider or amend when they provided supporting documentation to establish Berry's agreement to resolve his claims through mandatory FINRA[1] arbitration and (2) denying their motions to dismiss and reconsider when public records and publicly available FINRA rules established Berry was obligated to arbitrate his claims against Appellants as a condition of his admitted registration as a FINRA-regulated broker. We affirm.[2]

## FACTS/PROCEDURAL HISTORY

Berry commenced this action against Appellants in 2017, asserting various causes of action including wrongful termination, breach of contract, and defamation. Berry alleged that, in 2014, Appellants forced him to resign from his position as a Wealth Manager and Senior Vice President with Wells Fargo Advisors.[3] He claimed this was in retaliation for his challenges to changes in his compensation arrangement and his refusal to participate in an allegedly illegal cross-selling program. In addition, Berry alleged that in 2016, he learned Wells Fargo Advisors had filed a Form U5 termination notice, which appeared on his official record. The Form U5 stated Wells Fargo Advisors had permitted him to resign, and it noted that his branch office manager had discovered several binders of customer information in the trunk of Berry's vehicle.

Appellants filed a motion to dismiss or stay the action pending arbitration, which the parties and the court treated as a motion to compel arbitration. They attached a supporting memorandum, three Forms U4, and the affidavit of Beverly W. Jackson. The three Forms U4 were dated November 5, 1994, January 16, 1995,

---

[1] "FINRA" is the abbreviation for Financial Industry Regulatory Authority, Inc.

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.

[3] Berry stated he joined the brokerage firm of "Wheat Butcher Singer" in 1994; in 1997, First Union Corporation acquired Wheat Butcher Singer, and the firm became "Wheat First Union"; in 2001, the firm's parent company merged with Wachovia Corporation, and its name changed to "Wachovia Securities"; finally, in 2008, "Wells Fargo" acquired "Wachovia," and the retail brokerage changed to "Wells Fargo Advisors" in 2009. Berry asserted that due to the 2009 acquisition, he became an employee of Wells Fargo Clearing Services, LLC, formerly known as Wells Fargo Advisors, LLC, and its parent company, Wachovia Securities Financial Holdings, LLC (collectively, Wells Fargo Advisors).

and September 28, 1995, respectively.  Each form included the following language:

> I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time . . . .

Item 10 included the abbreviation "SRO"[4] and the heading "to be registered with," and a list of ten SROs appeared with a box above each that the registrant could select.  All three forms listed Wheat First Securities, Inc. as the firm name.  On the 1994 form, the boxes next to the following SROs were selected in Item 10: ASE (the American Stock Exchange), NASD (National Association of Securities Dealers), NYSE (the New York Stock Exchange), and PHLX (the Philadelphia Stock Exchange).  Only the November 1994 form designated any SROs.

The circuit court held a hearing on Appellants' motion.  Appellants argued brokers wishing to work in the securities industry must sign a Form U4, register with and be licensed through FINRA, and abide by FINRA's rules.  They asserted Berry completed a Form U4 in 1994 when he began working for the predecessor entity and the arbitration provision contained within the form was binding upon Berry and Wells Fargo Advisors.  In addition, Appellants argued Berry was a registered representative or associated person under FINRA and that FINRA Rule 13200(A)[5] bound the parties to arbitration.

Berry neither admitted nor denied that he was registered with FINRA or that he was a registered associate of Wells Fargo Advisors.  He argued Appellants, as the parties seeking to compel arbitration, failed to satisfy their burden to prove that

---

[4] SRO refers to a "self-regulatory organization." *See Dean v. Heritage Healthcare of Ridgeway, LLC*, 408 S.C. 371, 386 n.12, 759 S.E.2d 727, 735 n.12 (2014) (noting a self-regulatory organization (SRO) is a forum that "must operate in strict compliance with the Securities and Exchange Act of 1934").

[5] FINRA Rule 13200(A) provides that "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among. . . Members and Associated Persons."  According to the FINRA rules, "the Code," as referenced in Rule 13200, "means the Code of Arbitration Procedure for Industry Disputes."  FINRA Rule 13100(h).

FINRA rules applied, that Berry was registered with FINRA, or that an agreement to arbitrate existed. Berry argued Jackson's affidavit was insufficient to authenticate the Forms U4 and Appellants were not parties to any of the forms. In addition, Berry asserted the form designated SROs that no longer operated arbitration forums. He agreed that there was a "consolidation" of the NASD and NYSE arbitration forums in 2007, and he conceded the new entity became FINRA. However, Berry contended neither NASD nor NYSE continued to operate a separate arbitration forum and the court could not substitute FINRA for NASD in the agreement. He acknowledged FINRA operated an arbitration forum but asserted the arbitration clause in the Form U4 failed because Item 10 did not include FINRA as a possible forum.

In response, Appellants suggested the court take judicial notice that, in the mid-2000s, NASD turned over its responsibilities for the regulation of the financial services industry, broker-dealers, and brokers to, and "essentially morphed" into, a newly created entity called FINRA. In addition, Appellants argued it was routine in the financial industry for disputes of this nature to proceed to arbitration and that they were entitled to enforce the arbitration agreement contained in the Forms U4 because Berry laid out the "transformation" of Wheat First Securities into Wells Fargo Advisors.

The circuit court took the matter under advisement and instructed the parties to provide proposed orders. Thereafter, the circuit court issued an order denying Appellants' motion to stay and compel arbitration. The court concluded (1) Appellants did not properly authenticate the forms; (2) the three Forms U4 did not satisfy Appellants' burden to prove the existence of an agreement by Berry to arbitrate his dispute with Appellants; and (3) even assuming an arbitration agreement arose between the parties by virtue of the 1994 Form U4, the agreement was void because the arbitration forums specified in the agreement no longer existed. Specifically, the circuit court concluded the 1994 and 1995 Forms U4 did not establish an agreement to arbitrate because Appellants were not parties to the forms. The court reasoned that the predecessor, Wheat First, was the named firm on the forms, and the forms contained no language stating that an arbitration obligation would extend to successors or assigns of that firm. The court noted that even if it were appropriate to take judicial notice of FINRA Rule 13200, Appellants failed to show it applied to Berry such that it would bind him to its arbitration procedure. The court concluded the selection of the designated forums constituted an integral term of the arbitration clause in the 1994 form. It found that because none of the identified forums existed and Appellants failed to show the

court could simply substitute FINRA as a forum, the arbitration agreement was impossible to perform and void.

Appellants then moved the court to reconsider or amend its order pursuant to Rules 59(e) and 60, SCRCP, asserting they obtained more recent Forms U4 that established (1) an enforceable arbitration agreement between Berry and Wells Fargo Advisors existed and (2) Berry was registered with FINRA, which provided an independent basis to compel arbitration of his claims. Appellants attached the additional forms and an affidavit of Michael Zuhr. The circuit court summarily denied the motion but noted it considered the submissions of the parties. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err by refusing to reconsider its order denying the motion to compel arbitration when Appellants submitted an affidavit and newly discovered evidence showing Berry agreed to arbitrate his claims?

2. Did the circuit court err by denying the motion to compel arbitration when public records and FINRA rules established Berry was obligated to arbitrate his claims against Appellants as a condition of his admitted registration with FINRA?

## STANDARD OF REVIEW

"Appeal from the denial of a motion to compel arbitration is subject to de novo review." *New Hope Missionary Baptist Church v. Paragon Builders*, 379 S.C. 620, 625, 667 S.E.2d 1, 3 (Ct. App. 2008). "Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings." *Gissel v. Hart*, 382 S.C. 235, 240, 676 S.E.2d 320, 323 (2009).

"The admission of evidence is within the discretion of the [circuit] court and will not be reversed absent an abuse of discretion. An abuse of discretion occurs when the conclusions of the [circuit] court either lack evidentiary support or are controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006) (citation omitted).

## LAW/ANALYSIS

## I. Evidentiary Issues

Additional Evidence

Appellants first argue the circuit court erred by refusing to consider the additional Forms U4 they submitted with their motion to reconsider filed pursuant to Rules 59(e) and 60(b), SCRCP. We find this argument is without merit. The circuit court's order denying the motion to reconsider indicated it considered the submissions of the parties.

Judicial Notice

Appellants argue that pursuant to Rule 201, SCRE, the circuit court erred by declining to take judicial notice of FINRA's rules, the content and use of the Form U4, and facts publicly available through FINRA's "statutorily-mandated 'BrokerCheck' website." We find this argument is unpreserved. *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779-80 (2004) ("Issues and arguments are preserved for appellate review only when they are raised to and ruled on by the [circuit] court."). In denying the motion to compel, the circuit court declined to rule upon Appellants' request that it take judicial notice of FINRA Rule 13200. In their motion to reconsider, they did not argue the circuit court failed to rule on this request, nor did they request that the court take judicial notice of any other matters. Therefore, we find Appellants' arguments that the circuit court failed to take judicial notice of the foregoing facts are unpreserved. *See Elam*, 361 S.C. at 24, 602 S.E.2d at 780 (noting a party must file a Rule 59(e), SCRCP, motion when "an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review").

Authentication

Appellants argue the circuit court erred by failing to consider on authentication grounds the Forms U4 dated 1994 and 1995 that it submitted at the hearing. We agree.

"A party offering evidence must meet '[t]he requirement of authentication . . . as a condition precedent to admissibility.'" *Deep Keel, LLC v. Atl. Private Equity Grp., LLC*, 413 S.C. 58, 64, 773 S.E.2d 607, 610 (Ct. App. 2015) (alteration and omission in original) (quoting Rule 901(a), SCRE ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.")). "'[T]he burden to authenticate . . . is not high' and requires only that the proponent 'offer[ ] a satisfactory foundation from which the jury could

reasonably find that the evidence is authentic.'" *Id.* (alterations and omissions in original) (quoting *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014)).

We conclude the circuit court abused its discretion by excluding the 1994 and 1995 Forms U4 submitted with the motion to compel based on Rule 901(a), SCRE.[6] Jackson attested that, as a paralegal of Wells Fargo & Company, she had "access to certain personnel records of current and former employees . . . and related corporate entities." In addition, she stated "[t]he [attached] Form U4 for Mr. Berry show[ed] that he was employed by Wheat First Securities Inc. at the time of its filing." We acknowledge Jackson's affidavit did not explain what a Form U4 was, identify the actual custodian of the document, or indicate that it was a true and correct copy. However, because the burden to authenticate is low, we find the foregoing was sufficient to satisfy Rule 901, SCRE, and the circuit court erred by excluding these documents. We now turn to the question of whether these forms established an agreement to arbitrate between the parties.

## II. Denial of the Motion to Compel Arbitration

### A. Agreement to Arbitrate

Forms U4

In their reply brief, Appellants argue the circuit court erred by rejecting Berry's agreements to arbitrate based on the alleged failure of the choice of forum. In addition, they argue the circuit court erred by finding no agreement between Wells Fargo Advisors and Berry existed because Wells Fargo Advisors was not listed as the firm on the 1994 and 1995 Forms U4. We disagree.

"The policies of the United States and this State favor arbitration of disputes." *New Hope Missionary Baptist Church*, 379 S.C. at 630, 667 S.E.2d at 6. "However, arbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute [that] he has not agreed to submit." *Gissel*, 382 S.C. at 241, 676 S.E.2d at 323. "Arbitration is available only when the parties involved contractually agree to arbitrate." *Towles v. United HealthCare Corp.*, 338 S.C. 29, 37, 524 S.E.2d 839, 843-44 (Ct. App. 1999). "The initial inquiry to be made by the [circuit] court is whether an arbitration agreement exists between the

---

[6] The circuit court made no finding as to authentication of the records Appellants submitted with their post-hearing motion. Therefore, its ruling as to authentication did not extend to those documents.

parties." *Hous. Auth. of City of Columbia v. Cornerstone Hous., LLC*, 356 S.C. 328, 334, 588 S.E.2d 617, 620 (Ct. App. 2003). "The determination of whether an arbitration agreement exists is 'a matter to be forthwith and summarily tried by the [c]ourt.'" *Id.* at 335, 588 S.E.2d at 620 (quoting *Jackson Mills, Inc. v. BT Capital Corp.*, 312 S.C. 400, 404, 440 S.E.2d 877, 879 (1994)).

"In order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to all essential and material terms of the contract." *Grant v. Magnolia Manor-Greenwood, Inc.*, 383 S.C. 125, 130, 678 S.E.2d 435, 438 (2009). "[O]nly if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern[,]' will the failure of the chosen forum preclude arbitration." *Id.* at 131, 678 S.E.2d at 438 (quoting *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000)). "Whe[n] designation of a specific arbitral forum has implications that may substantially affect the substantive outcome of the resolution, . . . it is neither 'logistical' nor 'ancillary.'" *Id.* at 132, 678 S.E.2d at 439 (holding when the parties' agreement stated disputes arising between the parties "shall be resolved by binding arbitration administered by the National Health Lawyers Association," the specific designation of that organization as an arbitrator was an "integral term of th[e] arbitration agreement" and the organization's unavailability to arbitrate the parties' dispute rendered the agreement unenforceable).

In *Dean v. Heritage Healthcare of Ridgeway, LLC*, our supreme court found that a "named arbitral forum is not a material term to agreements in which the parties agree to arbitrate 'in accordance with' the named forum's rules, absent other evidence to the contrary" but opined that "when parties elect for a proceeding [to be] 'administered by' a named forum, that forum should be viewed as integral to the arbitration agreement, absent other evidence to the contrary." 408 S.C. 371, 384, 759 S.E.2d 727, 734 (2014). However, the *Dean* court distinguished cases in which the parties agreed to arbitrate "in accordance with" the rules of an SRO. *See id.* at 386 n.12, 759 S.E.2d 727, 735 n.12 (distinguishing two cases in which the parties agreed to arbitrate "'in accordance with' a named forum's rules" because those "cases involve[d] federal securities law and the decision to arbitrate before a[n SRO]," which is a forum that "must operate in strict compliance with the Securities and Exchange Act" (quoting *Deeds v. Regence Blueshield of Idaho*, 141 P.3d 1079, 1082 (Idaho 2006))); *id.* ("In contrast to the SROs, which are closely governed by the Securities and Exchange Commission and have developed complex regulatory schemes for overseeing arbitration of securities disputes, the AAA simply provides a list of potential arbitrators from which the parties can choose, as well as procedural rules for conducting the arbitration, and coordinates

the logistics of setting up the parties with the chosen arbitrator. . . . Unlike the SROs, arbitration 'in accordance with the applicable rules of the AAA' is not dependent on the AAA overseeing the arbitration." (quoting *Deeds*, 141 P.3d at 1082)).

We find the failure of the choice of forum invalidated the agreements contained in the 1994 and 1995 Forms U4. Here, all three of the Forms U4 Appellants submitted with their motion to compel arbitration listed "Wheat First Securities, Inc." as the firm name, and the only SROs selected were the ASE, NASD, NYSE, and PHLX. Even if any of these SROs still existed, the parties did not dispute they no longer provided arbitration services. We find the arbitration forum was a material and integral term of the agreement, and because the indicated organizations no longer existed or provided arbitration services, there was no enforceable agreement to arbitrate.

Further, we find none of the Forms U4 established an agreement to arbitrate between Berry and Appellants. First, the agreements contained in the 1994 and 1995 Forms U4 were between Berry and a firm that no longer existed, and they contained no language binding successors or assigns to the named firm. Appellants, therefore, could not enforce any purported agreement to arbitrate contained therein. Second, the 1999 and 2014 Forms U4 that Appellants submitted with their motion to reconsider likewise failed to establish an enforceable agreement to arbitrate between Berry and Appellants. Jackson's affidavit stated "Wachovia Securities Financial Holdings, Inc." was the parent company of Wells Fargo Clearing Services, LLC, formerly known as Wells Fargo Advisors, LLC, and an "indirect subsidiary of Wells Fargo & Company." She attested "Wheat First Securities, Inc." was "the predecessor in interest to Wells Fargo Advisors, LLC" and gave the history of the mergers and acquisitions that resulted in the creation of this entity. The 1999 Form U4 designated "Everen Securities" as the firm name[7] and contained the same arbitration clause that was included on the 1994 and 1995 Forms U4. However, this form contained no language indicating it bound successors and assigns to the named firm. Further, FINRA was not yet in existence and therefore was not included as an SRO on the 1999 Form U4. Finally, the 2014 Form U4 designated Wells Fargo Advisors as the firm and FINRA as an SRO, but it contained no arbitration agreement. Therefore, although we acknowledge the 2014 form indicated Berry was registered with FINRA in 2014, we find neither the 1999 nor the 2014 form established Berry agreed to arbitrate his claims against Appellants. *See Towles*, 338 S.C. at 37, 524 S.E.2d at

---

[7] Zuhr attested Everen Securities was a predecessor of Wells Fargo Advisors.

843-44 ("Arbitration is available only when the parties involved contractually agree to arbitrate."); *Cornerstone Hous., LLC*, 356 S.C. at 334, 588 S.E.2d at 620 ("The initial inquiry to be made by the [circuit] court is whether an arbitration agreement exists between the parties.").

FAA

Appellants contend the Federal Arbitration Act (the FAA)[8] applies to "the arbitration agreement found in the Form U4 [that] every registered representative must complete to sell securities in the United States and compels arbitration for claims such as those raised here." We disagree.

Even if a contested arbitration agreement complies with the FAA, the parties "must still have agreed, as a matter of general state contract law, to arbitrate." *See York v. Dodgeland of Columbia, Inc.*, 406 S.C. 67, 80, 749 S.E.2d 139, 145 (Ct. App. 2013).

Appellants rely upon *Stokes v. Metropolitan Life Insurance Co.*, 351 S.C. 606, 610, 571 S.E.2d 711, 713 (Ct. App. 2002) to support their argument. We acknowledge that if an enforceable arbitration agreement in fact existed between the parties, the FAA would apply, and *Stokes* supports this conclusion. *See id.* at 610, 571 S.E.2d at 713. However, the parties in *Stokes* did not dispute the continued existence of the named forum or that an agreement between the parties to arbitrate in fact existed. *See id.* Further, the parties in *Stokes* did not raise the question of whether the party seeking to compel arbitration was a party to the Form U4. Here, as we stated, none of the Forms U4 contain an agreement between the parties to arbitrate their disputes. Therefore, the FAA does not apply.

Based on the foregoing, we find the Forms U4 did not create an enforceable agreement between the parties to arbitrate, and we affirm the circuit court's denial of the motion to compel arbitration.

---

[8] *See, e.g.*, 9 U.S.C. § 2 (providing "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

## B. FINRA Rules as Independent Basis to Compel Arbitration

Appellants argue that regardless of whether the Forms U4 established an enforceable agreement to arbitrate, FINRA Rule 13200 nevertheless required Berry to arbitrate this dispute. They contend that to sell securities, Berry was required to have an active Form U4 at all times, and FINRA Rule 13200 mandated arbitration of all industry disputes. Appellants assert the enforceability of FINRA's rules mandating arbitration is "so inescapable that courts have repeatedly held that *the rule itself* is an enforceable, written agreement to arbitrate," and compelled arbitration on those grounds. We disagree.

"Arbitration is available only when the parties involved contractually agree to arbitrate." *Towles*, 338 S.C. at 37, 524 S.E.2d at 843-44. FINRA Rule 13200(a) provides,

> Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
>
> - Members;
> - Members and Associated Persons; or
> - Associated Persons.

"The term 'Code' means the Code of Arbitration Procedure for Industry Disputes." *See* FINRA Rule 13100(h).

Even assuming Berry was registered as an associated person with FINRA, no precedent requires us to conclude FINRA Rule 13200, in and of itself, constituted an enforceable arbitration agreement between Berry and Appellants. Although Appellants assert courts have uniformly interpreted a similar FINRA rule—Rule 12200—as an enforceable agreement to arbitrate, Rule 12200 pertains to disputes between members and customers. *See Waterford Inv. Servs., Inc. v. Bosco*, 682 F.3d 348, 353 (4th Cir. 2012) ("The FINRA Code provides that a customer can compel arbitration of a dispute 'between a customer and a member or associated person of a member' when the dispute 'arises in connection with the business activities of the member or the associated person.'" (quoting FINRA Rule 12200)); *Id.* ("This provision 'constitutes an "agreement in writing" under the F[AA,] . . . which binds . . . [a FINRA] member, to submit an eligible dispute to

arbitration upon a customer's demand.'" (second alteration in original) (quoting *Wash. Square Secs., Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004))).  We have been unable to identify any precedent extending the foregoing interpretations to FINRA Rule 13200.  Notwithstanding the language of FINRA Rule 13200, we conclude the record must demonstrate the parties agreed to arbitrate their disputes, independent of either party's registration with FINRA.  *See Towles*, 338 S.C. at 37, 524 S.E.2d at 843-44 ("Arbitration is available only when the parties involved contractually agree to arbitrate.").  As we stated, the Forms U4 Appellants included with their motion to compel arbitration did not demonstrate an agreement to arbitrate existed between Appellants and Berry.  We conclude that without such an agreement, FINRA Rule 13200 does not bind an associated person to arbitrate his disputes with a member.  Accordingly, even assuming Berry was registered as an associated person with FINRA, we conclude FINRA Rule 13200 did not constitute an independent basis upon which to compel him to arbitrate his claims.[9]  We therefore affirm the circuit court's denial of the motion to compel arbitration.

**CONCLUSION**

For the foregoing reasons, the circuit court's ruling denying Appellants' motion to compel arbitration is

**AFFIRMED.**

**GEATHERS and MCDONALD, JJ., concur.**

---

[9] We need not consider Appellants' argument that Berry failed to establish a valid defense to arbitration because they concede the circuit court did not rule upon this question.  *See, e.g.*, *Elam*, 361 S.C. at 23, 602 S.E.2d at 779-80 ("Issues and arguments are preserved for appellate review only when they are raised to and ruled on by the [circuit] court.").