# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Darlene Dean, as Personal Representative of the Estate of Louise Porter, Respondent,

v.

Heritage Healthcare of Ridgeway, LLC, Uni-Health Post Acute Care-Tanglewood, LLC and UHS Pruitt Corporation, Appellants.

Appellate Case No. 2013-000509

———

Appeal From Fairfield County
J. Ernest Kinard, Jr., Circuit Court Judge

———

Opinion No. 27401
Heard April 1, 2014 – Filed June 18, 2014

———

**REVERSED AND REMANDED**

———

Todd W. Smyth and Joshua Steven Whitley, both of Smyth Whitley, LLC, of Charleston, for Appellants.

John D. Kassel and Theile Branham McVey, of Kassel McVey, and Gerald Jowers, Jr., of Janet, Jenner & Suggs, all of Columbia, and Kenneth G. Goode, of Winnsboro, for Respondent.

———

**CHIEF JUSTICE TOAL:**     Heritage Healthcare of Ridgeway, LLC, Uni-Health Post-Acute Care - Tanglewood, LLC (Tanglewood), and UHS-Pruitt Corporation (collectively, Appellants) ask this Court to reverse the circuit court's

denial of their motion to compel arbitration in this wrongful death and survival action involving Appellants' allegedly negligent nursing home care. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

Tanglewood is a skilled nursing facility located in Ridgeway, South Carolina, and is owned and controlled by Appellants. In January 2007, Tanglewood and Darlene Dean (Respondent) entered into a nursing home residency agreement in which Tanglewood assumed responsibility for the care of Respondent's mother, Louise Porter (the patient). The same day, Respondent signed a separate, voluntary arbitration agreement (the Agreement).[1]

The Agreement states that:

any and all controversies, claims, disputes, disagreements or demands of any kind . . . arising out of or relating to the [patient's residency agreement] with the Facility . . . or any service or care provided to the [patient] by the Facility shall be settled exclusively by binding arbitration. This means that the parties are waiving their right to a trial before a jury or a judge.

Further, the Agreement provides that:

Any arbitration proceeding that takes place under this [] Agreement *shall follow the rules of the American Arbitration Association ('AAA')* and any resulting decision shall be enforceable by a court of competent jurisdiction. The arbitration proceeding shall be conducted where the Facility is located or as close to the Facility as practical. The arbitration proceeding shall be conducted before one neutral arbitrator selected *in accordance with the rules of the AAA*. The parties agree to bear their own attorneys' fees and costs associated with the arbitration proceeding.

*Id.* (emphasis added). Finally, the Agreement contains a severability clause and

---

[1] The patient did not sign either the residency agreement or the Agreement on her own behalf, although she was competent at the time of her admission to Tanglewood. Moreover, Respondent did not have a health care power of attorney empowering her to sign on the patient's behalf.

states, in bold font directly above the signature lines, that the patient "is not required to sign this [] Agreement in order to be admitted to or to remain in the Facility." (Emphasis in original).

In 2009, the patient fell three separate times within a ten day period, fracturing her hip in the third fall. Over the next two months, the patient underwent two hip surgeries; however, due to complications following the surgeries, the patient died on September 30, 2009.

On December 20, 2011, Respondent—acting in her capacity as personal representative of her mother's estate—filed a Notice of Intent (NOI) to file a medical malpractice suit against Appellants, as well as an expert affidavit in support of her NOI. *See* S.C. Code Ann. § 15-79-125 (Supp. 2012). Respondent also alleged claims for survival and wrongful death.

Appellants requested discovery of all of the patient's medical records, which Respondent provided. The parties then engaged in the statutorily required pre-suit mediation; however, following an impasse, Respondent filed her complaint on March 23, 2012. In lieu of filing an answer to the complaint, Appellants filed a motion to dismiss pursuant to Rules 12(b)(1) and (6), SCRCP, or, in the alternative, a motion to compel arbitration and stay the litigation.

Respondent opposed the motion, arguing, *inter alia*, that the Agreement was unenforceable because the "forum selection" clause had failed. More specifically, Respondent claimed the portion of the Agreement stating that "[a]ny arbitration proceeding that takes place under this [] Agreement shall follow the rules of the [AAA]" meant that the parties had agreed to an arbitration proceeding administered exclusively by the AAA. However, since January 1, 2003, the AAA has refused to accept personal injury disputes without a post-injury agreement to arbitrate.[2] Thus, because Respondent viewed the "exclusive" arbitral forum as unavailable, she contended it would be improper to compel arbitration.

Relying on *Grant v. Magnolia Manor-Greenwood, Inc.*, 383 S.C. 125, 678 S.E.2d 435 (2009), the circuit court agreed, invaliding the Agreement in its entirety and refusing to compel arbitration between the parties.[3] Specifically, the court

---

[2] Am. Arbitration Ass'n, *Healthcare Policy Statement*, ADR.org, https://www.adr.org/aaa/ShowPDF?doc=ADRSTG_011014 (last visited June 13, 2014).

[3] The circuit court refused to compel arbitration for two reasons, namely "wrongful

found that "the forum selection is an integral part of the [A]greement and cannot be remedied" because "the forum selected by [Appellants] will not hear this type of dispute." Because the court held the Agreement completely invalid, it declined to address any of Respondent's remaining arguments as to why the court should compel arbitration between the parties.[4]

Appellants filed a motion to reconsider, which the circuit court denied. Appellants appealed, and this Court certified the appeal pursuant to Rule 204(b), SCACR.

## STANDARD OF REVIEW

Arbitrability determinations are subject to *de novo* review. *Bradley v. Brentwood Homes, Inc.*, 398 S.C. 447, 453, 730 S.E.2d 312, 315 (2012). However, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings. *Id.* at 453, 730 S.E.2d at 315. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *accord Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1083 (Ala. 2005).

## ANALYSIS

death actions are not something that's arbitrated, one, two Triple A doesn't take them." We note that courts may not refuse to compel arbitration simply because a wrongful death claim is involved. *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203–04 (2012) (per curiam) (invalidating West Virginia's policy refusing to refer wrongful death claims against a nursing home to arbitration).

[4] In addition to arguing that the specified forum was unavailable, Respondent asserted that: (1) the Federal Arbitration Act (FAA) did not apply because the residency agreement did not involve interstate commerce; (2) there was no meeting of the minds in forming the Agreement because Appellants' employee did not know how the AAA functioned; (3) Appellants waived their right to arbitrate by requesting discovery prior to the pre-suit mediation conference, participating in the mediation, and "waiting too long" to move to compel arbitration after the mediation concluded; and (4) there was no valid arbitration agreement at all because the patient, although competent, did not sign the Agreement, and Respondent had no authority to sign on the patient's behalf because she lacked a health care power of attorney.

## I. Interstate Commerce and the Federal Arbitration Act

As a threshold matter, we address whether federal or state arbitration law applies to the instant controversy. Respondent claims that the Federal Arbitration Act (FAA) does not apply to the Agreement because the residency agreement does not involve interstate commerce. (Citing *Timms v. Greene*, 310 S.C. 469, 427 S.E.2d 642 (1993), *overruled in part by Cape Romain Contractors, Inc. v. Wando E., L.L.C.*, 405 S.C. 115, 123 n.5, 747 S.E.2d 461, 465 n.5 (2013)). We disagree.

"[T]he basic purpose of the [FAA] is to overcome courts' refusals to enforce agreements to arbitrate," *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995), and "ensure that arbitration will proceed in the event a state law would have a preclusive effect on an otherwise valid arbitration agreement." *Bradley*, 398 S.C. at 453, 730 S.E.2d at 315. To that end, the United States Supreme Court held in *Allied-Bruce* that, unless the parties specifically contracted otherwise, the FAA would apply whenever an arbitration agreement involves interstate commerce. 513 U.S. at 273–77; *Bradley*, 398 S.C. at 453–54, 730 S.E.2d at 315. Moreover, the Supreme Court clarified that the reach of interstate commerce—and thus the FAA—was coextensive with the broad reach of the Commerce Clause.[5] *Allied-Bruce*, 513 U.S. at 277; *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 590, 553 S.E.2d 110, 115 (2001). Thus, in practice, arbitration agreements enjoy a strong presumption of validity in federal and state courts. *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 24, 644 S.E.2d 663, 668 (2007); *Zabinski*, 346 S.C. at 596, 553 S.E.2d at 118.

To ascertain whether an arbitration agreement implicates interstate commerce and the FAA, "the court must examine the agreement, the complaint, and the surrounding facts," focusing particularly on "'what the terms of the contract specifically require for performance.'" *Bradley*, 398 S.C. at 455, 730 S.C. at 316 (quoting *Thornton v. Trident Med. Ctr. L.L.C.*, 357 S.C. 91, 96, 592 S.E.2d 50, 52 (Ct. App. 2003)); *Zabinski*, 346 S.C. at 594, 553 S.E.2d at 117. This is generally a very fact-specific inquiry. *Cf. Thornton*, 357 S.C. at 95–96, 592 S.E.2d at 52 (citing *Zabinski*, 346 S.C. at 594, 553 S.E.2d at 117).

In arguing that the residency agreement did not involve interstate commerce, Respondent relied heavily on *Timms v. Greene*, which predated *Allied-Bruce*'s pronouncement regarding the breadth of interstate commerce. In *Timms*, the parties entered into a nursing home residency contract that included an arbitration

---

[5] U.S. Const. art. I, § 8, cl. 3.

agreement. 310 S.C. 469, 470–71, 427 S.E.2d 642, 643 (1993). After the plaintiff-resident suffered an injury at the hands of a nursing home employee, she filed suit instead of initiating arbitration proceedings, arguing that arbitration could not be compelled under the FAA because the contract was for the provision of patient-resident services in South Carolina and therefore did not involve interstate commerce. *Id.* at 472, 427 S.E.2d at 644.[6] In attempting to compel arbitration, the nursing home asserted, *inter alia*, that they purchased the majority of their goods, equipment, and supplies from out-of-state vendors. *Id.* at 473, 427 S.E.2d at 644.

This Court held that "the contract . . . [was] obscure, if not devoid, of any basis for holding that [interstate] commerce was involved." *Id.* at 472, 427 S.E.2d at 644. Specifically, the Court found the nursing home's assertion regarding the supplies and goods irrelevant because it was not the basis of the contract between the parties, which was to provide patient care services in a South Carolina facility. *Id.* at 473, 427 S.E.2d at 644. Therefore, the Court found the FAA inapplicable because the basis of the contract did not involve interstate commerce. *Id.*

Since the Supreme Court decided *Allied-Bruce*, many—if not all—federal and state courts have held that nursing home residency contracts similar to the one at issue here implicate interstate commerce and the FAA. Generally, these holdings center on a common theme: nursing home residency contracts usually entail providing residents with meals and medical supplies that are inevitably shipped across state lines from out-of-state vendors.[7]

---

[6] The *Timms* Court could not compel arbitration under state law because the South Carolina Uniform Arbitration Act does not apply to any claims "arising out of personal injury[, whether such claims are] based on contract or tort . . . ." S.C. Code Ann. § 15-48-10(b)(4) (2005 & Supp. 2012).

[7] *See, e.g.*, *McCutcheon v. THI of S.C. at Charleston, L.L.C.*, No. 2:11–CV–02861, 2011 WL 6318575, at *5 (D.S.C. Dec. 15, 2011) (holding that the contracted-for care involved providing food and medical services from out-of-state vendors and thus involved interstate commerce); *Pickering v. Urbantus, L.L.C.*, 827 F. Supp. 2d 1010, 1014–15 (S.D. Iowa 2011) (same); *Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So. 2d 661, 668 (Ala. 2004) (same); *Triad Health Mgmt. of Ga., III, L.L.C. v. Johnson*, 679 S.E.2d 785, 787–88 (Ga. Ct. App. 2009) (same); *Miller v. Cotter*, 863 N.E.2d 537, 544 (Mass. 2007) (holding health care in general is an activity subject to federal control under the Commerce Clause and thus involves interstate commerce).

We likewise find the terms of the residency agreement implicate interstate commerce and, thus, the FAA.  Appellants are contractually required to provide meals and medical supplies, which are instrumentalities of interstate commerce.  *Cf. Zabinski*, 346 S.C. at 580, 553 S.E.2d at 110 (explaining construction contracts involve interstate commerce because they are based on transactions for the purchase and use of materials and supplies from out-of-state vendors).  Although the meals and medical supplies are irrelevant to the current dispute, they must nonetheless be considered because the residency agreement specifically requires Appellants provide these goods and supplies.  *Bradley*, 398 S.C. at 455, 730 S.E.2d at 316 (stating that the Court must "focus upon what the terms of the contract specifically require for performance in determining whether interstate commerce was involved" (internal marks omitted)).  Although *Timms* might compel us to hold to the contrary, we find *Timms* is a relic of the past, decided before the broad definition of interstate commerce set forth in *Allied-Bruce*.  Consequently, we explicitly overrule *Timms* in its entirety and find that the residency agreement here does, in fact, involve interstate commerce, and thus is governed by the FAA.

## II. Validity of the Agreement

In essence, the outcome of this appeal turns on whether the unavailability of the AAA to serve as arbitrator dooms the Agreement as a whole.  *See Meskill v. GGNSC Stillwater Greeley, L.L.C.*, 862 F. Supp. 2d 966, 972 (D. Minn. 2012).  "This question has vexed courts across the country and resulted in a substantial split of authority."  *Id.*

In resolving similar cases, the courts' primary inquiry is whether the named forum is an integral part of the arbitration agreement, or whether it is instead an ancillary consideration.  *See Grant*, 383 S.C. at 131–32, 678 S.E.2d at 439 ("[O]nly [when] the choice of forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern, will the failure of the chosen forum preclude arbitration." (quoting *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1220 (11th Cir. 2000)) (internal quotation and alteration marks omitted)); *see also Carideo v. Dell, Inc.*, No. C06-1772JLR, 2009 WL 3485933, at *4 (W.D. Wash. Oct. 26, 2009).

> [T]his is because arbitration is a matter of contract.  If designation of a specific arbitral forum was of great import to the parties and that forum later turns out to be unavailable, [courts] should not rewrite their agreement and order arbitration someplace else.  In such a situation, it is as though an essential term of the agreement has failed.

> *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 150 N.M. 398, 259 P.3d 803, 812 (2011) ("If the plain language of a contract evidences the parties' intention to resolve disputes solely through a specific arbitration provider, the parties' intent would be frustrated if a court appointed a different arbitration provider.").

*Meskill*, 862 F. Supp. 2d at 975.

Thus, in examining similar clauses, a majority of jurisdictions distinguish agreements requiring a proceeding "administered by" the named forum from those requiring a proceeding conducted "in accordance with" the named forum's rules. In the case of proceedings "administered by" a named forum, most courts view the forum selected as an integral term of the agreement because it is an express statement of the parties' intent to arbitrate exclusively before that forum; therefore, if the forum is unavailable, a material term of the agreement has failed, rendering the entire arbitration agreement invalid. *See, e.g.*, *Grant*, 383 S.C. at 131–32, 678 S.E.2d at 439; *see also, e.g.*, *Carideo*, 2009 WL 3485933, at *4; *Carr v. Gateway, Inc.*, 918 N.E.2d 598 (Ill. Ct. App. 2009); *Covenant Health & Rehab. of Picayune, L.P. v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695 (Miss. 2009).

Conversely, in the case of proceedings conducted "in accordance with" a named forum's rules, most courts view that forum "selection," if it was intended to serve as such,[8] as an ancillary consideration to the parties' primary intent of arbitrating, in front of any arbitrator, while using a set of pre-specified rules; therefore, if the forum itself is unavailable, courts nonetheless uphold the arbitration agreement and compel arbitration in an alternate forum, so long as the alternate forum follows the agreed-upon rules. *See, e.g.*, *Rigas*, 923 So. 2d at 1077; *Westmoreland v. High Point Healthcare Inc.*, 721 S.E.2d 712 (N.C. Ct. App. 2012); *see also, e.g.*, *Meskill*, 862 F. Supp. 2d at 971–77; *Fellerman v. Am. Ret. Corp.*, No. 03:09-CV-803, 2010 WL 1780406, at *5 (E.D. Va. May 3, 2010) (collecting cases and noting that "courts tend to enforce arbitration agreements whose terms specify that the parties be bound only by the rules of the AAA"); *Carideo*, 2009 WL 3485933, at *4 ("Where the arbitration clause selects merely the rules of a specific arbitral forum, as opposed to the forum itself, and another

---

[8] For the reasons we will discuss, *infra*, we find it difficult to believe that choosing to arbitrate "in accordance with" a named forum's rules truly indicates an intent to select the named forum as the exclusive arbiter, absent additional evidence to the contrary.

arbitral forum could apply those rules, the unavailability of the implicitly intended arbitral forum will not require the court to condemn the arbitration clause." (citing *Reddam v. KPMG L.L.P.*, 457 F.3d 1054, 1059–61 (9th Cir. 2006), *abrogated on other grounds by Atl. Nat'l Trust L.L.C. v. Mount Hawley Ins. Co.*, 621 F.3d 931 (9th Cir. 2010))).

For the reasons discussed, *infra*, we adopt the majority rule distinguishing between "in accordance with" and "administered by." More specifically, we find that the named arbitral forum is not a material term to agreements in which the parties agree to arbitrate "in accordance with" the named forum's rules, absent other evidence to the contrary; however, as in *Grant*, when parties elect for a proceeding "administered by" a named forum, that forum should be viewed as integral to the arbitration agreement, absent other evidence to the contrary.

First, looking at the plain language of the arbitration agreement, there is no reason any potential arbitration proceeding between the parties cannot "follow the rules of" the AAA in a different arbitral forum. *Deeds v. Regence Blueshield of Idaho*, 141 P.3d 1079, 1081–82 (Idaho 2006); *see also Meskill*, 862 F. Supp. 2d at 972 ("On its face, this provision does not mandate that the NAF actually *conduct* the arbitration—it requires only that the NAF Code be *applied* by the arbitrator."); *Rigas*, 923 So. 2d at 1092 (same); *Westmoreland*, 721 S.E.2d at 719–20 (same).

Second, the Agreement states that the parties wish to follow the AAA's rules, not its policies. While the AAA has a *policy* not to arbitrate individual patients' claims, it does not have a *rule* stating that such claims are not arbitrable. Thus, according to the plain language of the Agreement, any potential arbitration proceeding between the parties must "follow the rules of" the AAA; however, the "AAA policy on the types of arbitrable claims is simply just that—AAA's policy." *Oesterle v. Atria Mgmt. Co., L.L.C.*, No. 09-4010-JAR, 2009 WL 2043492, at *8–9 (D. Kan. July 4, 2009) (citing and discussing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995)); *see also Nail v. Consol. Res. Health Care Fund I*, 229 P.3d 885, 887–89 (Wash. Ct. App. 2010). To read the Agreement's language in accordance with the AAA's policy—that personal injury claims are non-arbitrable—would be "in direct conflict with [the] strong public policy in favor of arbitration." *Westmoreland*, 721 S.E.2d at 720; *cf. Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203–04 (2012) (per curiam) (unanimously invalidating a state's public policy to not refer wrongful death claims against a nursing home to

arbitration).[9]

Likewise, we reject Respondent's argument that the AAA rules themselves bar any non-AAA arbiter from applying the AAA's rules. For example, Respondent cites AAA Rule R-2, which states that "[w]hen parties agree to arbitrate under [the AAA's] rules, . . . they thereby authorize the AAA to administer the arbitration."[10] However, we find that "authorization to administer does not rise to the level of contractual assent to have the matter administered exclusively before that forum." *Fellerman*, 2010 WL 1780406, at *5. Further, had the parties truly intended that the AAA serve as the exclusive arbitral forum, they could have easily said so, with "no need for them to do so obliquely by specifying that the arbitration must be conducted" in accordance with the AAA's rules. *See Meskill*, 862 F. Supp. 2d at 973 (quoting *Brown v. Delfre*, 968 N.E.2d 696, 703 (Ill. App. Ct. 2012)) (internal quotation and alteration marks omitted) (collecting cases). Rather, by invoking only the AAA's rules, and not the AAA itself, the Agreement suggests that the parties anticipated an entity *other than the AAA* might conduct the arbitration. *See id.*

Notably, aside from AAA Rule R-2, Respondent has not offered any evidence that the "exclusive" designation of the AAA was an important consideration to either herself or Appellants when the parties entered the Agreement. *See id.* at 975. In fact, Respondent herself admits that neither she nor Appellants' employee (who signed the Agreement on Appellants' behalves) even knew about the AAA—or its rules—when signing the Agreement. *Accord id.*

---

[9] This is not to say that parties cannot mutually agree that personal injury claims are not arbitrable; indeed, arbitration is a matter of contract, and parties "may limit . . . the issues which they will arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). However, because all doubts concerning the scope of an arbitration agreement must be resolved in favor of arbitration, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), the parties must be explicit in their intent to exclude such claims from the scope of the agreement.

[10] Am. Arbitration Ass'n, *Commercial Arbitration Rules and Mediation Procedures (Including Procedures for Large, Complex Commercial Disputes)*, ADR.org, 11 (Oct. 1, 2013), https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased.

Moreover, after examining the portions of the AAA's rules submitted by Respondent, we find nothing so unique to suggest that the parties implicitly designated the AAA as their exclusive arbitral forum because of some particular expertise the AAA held.  *See id.* at 973–74 (collecting cases); *accord Wright v. GGNSC Holdings L.L.C.*, 808 N.W.2d 114, 120–21 (S.D. 2011).  Rather, given the Agreement's mere passing reference to the AAA's rules, we find that the parties' intentions in selecting the rules were to set forth, prior to a dispute, common procedural rules, such as those concerning service.  *See Wright*, 808 N.W.2d at 121.[11]  Thus, because a substitute arbitrator could easily apply such predetermined procedural rules, we find that the parties did not select the AAA for its particular expertise.  *Id.* at 121.[12]

---

[11] *Cf. Meskill*, 862 F. Supp. 2d at 975–76 (finding significant the fact that the named arbitral forum was "mentioned only once" in the arbitration agreement because it "suggest[ed] that the parties' 'overarching purpose' was to submit to arbitration any disputes that might arise between them," and not to only arbitrate in front of the named forum (citing *Diversicare Leasing Corp. v. Nowlin*, No. 11-CV-1037, 2011 WL 5827208, at *6 (W.D. Ark. Nov. 18, 2011))); *Rivera v. Am. Gen. Fin. Servs., Inc.*, 259 P.3d 803, 815 (N.M. 2011) ("Given the number of references to the NAF as the only named arbitrator and the substantial reliance on the NAF *Code of Procedure* throughout the contract, we could not sever the unenforceable terms of the arbitration provisions without substantially rewriting the contract."); *Crossman v. Life Care Ctrs. of Am., Inc.*, 738 S.E.2d 737, 740 (N.C. Ct. App. 2013) (same).

[12] We note that Respondent relied primarily on *Smith Barney, Inc. v. Critical Health Systems of North Carolina, Inc.*, 212 F.3d 858 (4th Cir. 2000), and *In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995), in support of her reading of the Agreement.  Both of these cases involve arbitration agreements requiring a proceeding "in accordance with" a named forum's rules; however, both are also distinguishable from the present action:

> These cases involve federal securities law and the decision to arbitrate before a self-regulatory organization (SRO), a forum which must operate in strict compliance with the Securities and Exchange Act of 1934 (SEC)[.]
>
> . . .
>
> In contrast to the SROs, which are closely governed by the

Finally, the Agreement contains a severance clause that permits severance of any portion of the Agreement later found to be unenforceable. "'The severance provision indicates that the intention was not to make the [AAA] integral, but rather only to have a dispute resolution process through arbitration.'" *Meskill*, 862 F. Supp. 2d at 976 (quoting *Jones v. GGNSC Pierre L.L.C.*, 684 F. Supp. 2d 1161, 1167 (D.S.D. 2010)) (internal alteration marks omitted) (collecting cases); *Fellerman*, 2010 WL 1780406, at *5.

Thus, we find that Respondent has not carried her burden to show that the AAA was both unavailable and material to the Agreement as a whole. *Grant*, 383 S.C. at 131–32, 678 S.E.2d at 438–39. Accordingly, we reverse the circuit court's determination that the Agreement is unenforceable, and we remand for the circuit court to consider Respondent's remaining arguments as to why the Agreement should not be enforced. *See supra* note 4.

## III. Waiver

Because remand is necessary, we address Respondent's claim that Appellants waived their right to arbitrate the claims against them because they "waited too long" to file the motion to compel arbitration. We disagree.

Parties may waive their right to enforce an arbitration clause. *Rhodes v. Benson Chrysler-Plymouth, Inc.*, 374 S.C. 122, 125, 647 S.E.2d 249, 251 (Ct. App. 2007) (citing *Liberty Builders, Inc. v. Horton*, 336 S.C. 658, 665, 521 S.E.2d 749, 753 (Ct. App. 1999)). However, the FAA requires courts to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the

---

Securities and Exchange Commission and have developed complex regulatory schemes for overseeing arbitration of securities disputes, the AAA simply provides a list of potential arbitrators from which the parties can choose, as well as procedural rules for conducting the arbitration, and coordinates the logistics of setting up the parties with the chosen arbitrator. Here, no one has argued the dominant intent of the parties was that *only* an AAA arbitrator could handle the dispute or that an AAA arbitrator, or the AAA as an organization, has some type of special expertise. Unlike the SROs, arbitration "in accordance with the applicable rules of the AAA" is not dependent on the AAA overseeing the arbitration.

*Deeds*, 141 P.3d at 1082.

problem at hand is the construction of the contract language itself or *an allegation of waiver, delay*, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (emphasis added). Thus, there is a presumption against finding a party has waived its right to compel arbitration, *E. Dredging & Constr., Inc. v. Parliament House, L.L.C.*, 698 So. 2d 102, 103 (Ala. 1997), and a "party seeking to prove a waiver of a right to arbitrate carries a heavy burden . . . ." *Rigas*, 923 So. 2d at 1093; *accord Green Tree*, 531 U.S. at 91. Specifically, the party seeking to avoid arbitration "must show prejudice through an undue burden caused by delay in demanding arbitration." *Liberty Builders*, 336 S.C. at 665, 521 S.E.2d at 753.

Here, after Respondent filed her NOI, the parties attempted to mediate the claims in accordance with section 15-79-125 for approximately four months prior to Respondent filing her formal complaint, and Appellants subsequently filing their motion to compel arbitration. During this mediation process, Appellants requested limited discovery in order to engage in meaningful settlement talks.

We find that Appellants did not delay in filing their demand for arbitration. Rather, Appellants participated in the statutorily required mediation process, and after Respondent filed her formal complaint, Appellants moved to compel arbitration at their first opportunity. Further, even were we to find that Appellants should have filed the motion to compel arbitration immediately after Respondent filed the NOI, rather than after Respondent filed the complaint, Respondent has shown no prejudice or undue burden to her from the four month delay. Thus, we conclude that Respondent's argument that Appellants' waived their right to enforce the Agreement is without merit.

We note that Respondent originally raised five arguments to the circuit court as to why the court should invalidate the Agreement. We have addressed three of these arguments; however, upon remand, the circuit court must consider her remaining arguments (concerning Respondent's authority to sign the Agreement and whether there was a meeting of the minds between the parties) prior to deciding whether to compel arbitration between the parties. *See supra* note 4.[13]

---

[13] We are concerned that, according to the Record, the patient did not sign either the residency agreement or the Agreement on her own behalf, despite being competent at the time, nor did Respondent possess a health care power of attorney to sign either contract on the patient's behalf. The parties did not address this issue on appeal, and Respondent's only argument that this issue should serve as an

## CONCLUSION

For the foregoing reasons, we reverse the circuit court and remand this case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

**BEATTY, KITTREDGE and HEARN, JJ., concur. PLEICONES, J., concurring in result only.**

---

additional sustaining ground was located in a cursory footnote in her brief. Accordingly, we merely note that, on remand, the circuit court must engage in a full inquiry into this matter prior to any attempt to enforce the Agreement.