Paul E. Danielson, Justice, dissenting. I respectfully dissent. Other jurisdictions have been presented with the issue whether arbitration agreements between nursing homes and residents are rendered unenforceable when the chosen forum is unavailable. I recognize that there is a substantial split of authority on the issue. See, e.g., Meskill v. GGNSC Stillwater Greeley LLC, 862 F.Supp.2d 966 (D.Minn.2012); Wert v. Manorcare of Carlisle PA, LLC, 124 A.3d 1248 (Pa. 2015); Miller v. GGNSC Atlanta, LLC, 323 Ga.App. 114, 746 S.E.2d 680 (2013). While the majority accepts the arguments advanced by the nursing home in this case, I am not convinced- by those arguments, nor am I persuaded by those cases from other jurisdictions compelling arbitration despite the unavailability of the designated arbitrator. Rather than point out deficiencies in the majority’s analysis, I simply set out my own analysis. 11sFor the reasons that follow, I would affirm the circuit court’s ruling that the arbitration agreement in this case is impossible to perform. This court has stated that whether an arbitration agreement is unenforceable based on a generally applicable contract defense is a question of state contract law. See LegalZoom.com, Inc. v. McIllwain, 2013 Ark. 370, 429 S.W.3d 261 (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). Under Arkansas law, the burden of proving impossibility of performance rests upon the party alleging it. See Ark. Realtors Ass’n v. Real Forms, LLC, 2014 Ark. 385, 442 S.W.3d 845 (citing Frigillana v. Frigillana, 266 Ark. 296, 584 S.W.2d 30 (1979)). In order to prove the defense, it must be shown that the thing to be done cannot be effected by any means. See id. First, the appellants reject the basic premise of Arnold’s position: that the arbitration agreement selects the National Arbitration Forum (“NAF”) as arbitrator. As the majority notes, the arbitration agreement provides that any and all claims “shall be resolved exclusively by binding arbitration to be conducted ... in accordance with the National Arbitration Forum Code of Procedure, (‘NAF’) which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process.” The NAF Code of Procedure states as follows in Rule 1(A): “This Code shall’be administered only .by the National Arbitration Forum or by any entity or individual providing- administrative -services by agreement with the National Arbitration Forum.” According to Arnold, because the arbitration agreement incorporates the NAF Code,- and because the NAF Code can only be administered by the NAF, the arbitration agreement effectively selects the NAF as arbitrator. I agree. It is axiomatic that arbitration agreements must be enforced according to their terms. See, e.g., Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Furthermore, under Arkansas law, arbitration is simply a matter of contract between parties. See, e.g., Courtyard Gardens Health & Rehab., LLC v. Quarles, 2013 Ark. 228, 428 S.W.3d 437. We have held that the same rules of construction and interpretation apply to arbitration agreements as to agreements generally; thus, we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. See id. Pursuant to the terms of the arbitration agreement in this case, the parties agreed to arbitrate their 'disputes in accordance with the NAF Code. The NAF Code, which is part of the arbitration agreement by virtue of incorporation, clearly states that it shall be administered only by the NAF. I note the appellants’ attempt to distinguish between administration of an arbitration, as phrased in Rule 1(A), and the actual arbitration of a dispute. In my view, this is a distinction without a difference. The NAF is not a person; thus, it cannot literally arbitrate a dispute, but, if it were still available, it could administer an arbitration and, in doing so, select an individual arbitrator or panel of arbitrators to preside. This conclusion is supported by persuasive authority. In cases interpreting arbitration agreements identical to the one at issue here, several courts have held that the designation of the NAF Code is synonymous with designating the NAF as arbitrator in light of Rule l(A)’s. statement that the Code shall be administered only by the NAF. - See, e.g., Miller, 746 S.E.2d 680 (stating, that the arbitration agreement designated the NAF as the parties’ exclusive arbitral forum); see also Wert, 124 A.3d 1248; GGNSC Tylertown, LLC v. Dillon ex rel. Hargrove, 87 So.3d 1063 (Miss. Ct. App. 2011); Stewart v. GGNSC-Canonsburg, L.P., 9 A.3d 215 (Pa. Super. Ct. 2010). Courts interpreting similar but not identical language have also concluded that the designation of a particular arbitral forum’s rules is the same as designating an arbitrator. See, e.g., Ranzy v. Tijerina, 393 Fed.Appx. 174 (5th Cir. 2010) (per curiam); Apex 1 Processing, Inc. v. Edwards, 962 N.E.2d 663 (Ind. Ct. App. 2012); Rivera v. Am. Gen. Fin. Servs., Inc., 150 N.M. 398, 259 P.3d 803 (2011). I acknowledge that other' courts have reached the opposite conclusion. For example, in Robinson v. Eor-Ark, LLC, No. 1:14-CV-01051, 2015 WL 5684140 (W.D. Ark. Sept. 28, 2015), Meskill, 862 F.Supp.2d 966, and Jones v. GGNSC Pierre LLC, 684 F.Supp.2d 1161 (D.S.D.2010), all of which involved, arbitration agreements identical to the one at issue in this case, federal district courts rejected the proposition that the “in accordance with” language effectively selected the NAF as.arbitrator. These courts focused on the fact that the arbitration agreement “invok[ed] only the Code and not the NAF itself.” Meskill, 862 F.Supp.2d at 973. I am not persuaded by this reasoning, however, because it fails to account for the fact that the arbitration agreement incorporates the NAF Code and thus includes an express statement that only the NAF can administer it. In Wright v. GGNSC Holdings LLC, 808 N.W.2d 114, 120 (S.D.2011), another cáse involving an identical arbitration agreement, the Supreme Court of South Dakota discounted the significance of Rule 1(A), stating that a different arbitral forum could apply the NAF’s “rules of procedure,” even though it could not administer the NAF Code. I am similarly unpersuaded by this analysis. As another court put it, the Wright court’s conclusion that any arbitrator could administer the public rules governing arbitration in place of the NAF rules “is not what the parties in Wright paid in their agreement, and the court’s decision essentially rewrote the agreement.” Riley v. Extendicare Health Facilities, Inc., 345 Wis.2d 804, 826 N.W.2d 398, 407 (Wis. Ct. App. 2012). Finally, the Seventh Circuit has also rejected reliance on Rule 1(A), holding that its exclusivity claim is “unenforceable” because “no author .can control how or by whom a written work is used.” Green v. U.S. Cash Advance Ill., LLC, 724 F.3d 787, 789-90 (7th Cir. 2013). Ejut Green is distinguishable from the case at bar: there, the arbitration agreement did not incorporate the NAF Code, meaning the language of Rule 1(A) was not technically part of the parties’ agreement. In sum, the better interpretation is that the designation of a particular arbitral forum’s rules, and the incorporation of those rules into the arbitration agreement, are synonymous with designating that forum as arbitrator, especially when those rules cannot be applied by a different forum. This best comports with the requirements that we enforce arbitration agreements in accordance -with their terms, see Volt Info., 489 U.S. 468, 109 S.Ct. 1248, and that we give effect to the parties’ intent as evidenced by the agreement itself, see Quarles, 2013 Ark. 228, 428 S.W.3d 437. For these reasons, I would hold that the arbitration agreement in this case effectively selects the NAF as arbitrator. " l%>My analysis does not end there, however, because the appellants argue that the Federal Arbitration Act (“FAA”) requires appointment of a' substitute arbitrator when a selected arbitrator becomes unavailable. There" is no dispute that the FAA as a whole applies in this case; the parties agreed -to it in the arbitration agreement, and they do not dispute it now. See Pest Mgmt., Inc. v. Langer, 369 Ark. 52, 250 S.W.3d 550 (2007) (citing Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)) (stating that the FAA applies to a transaction involving interstate commerce). While the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance. See, e.g. Rivera, 259 P.3d 803 (citing Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010)). To determiné whether the- arbitration agreement is enforceable, we must consider mot only general principles of Arkansas contract law but also substantive federal case law interpreting the FAA. See id. Section 5 of the FAA provides that, where the chosen arbitral forum is unavailable or has failed for some reason, a .substitute arbitrator may be named. See Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217 (11th Cir.2000). The Eleventh Circuit has articulated a test for determining when section 5 applies: “Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an ‘an-ciliary logistical- concern’ will the failure of the chosen forum preclude arbitration.” Id. at 1222. In other words, where the language of the arbitration agreement reflects that the choice-of arbitral forum is an- “integral part” of the agreement, then the agreement will be considered: unenforceable if the forum is unavailable. See Miller, 746 S.E.2d at 685. If, on the other hand, the agreement shows that the selection of a particular forum was merely an “ancillary, logistical.'concern,” section 5 will apply and a substitute arbitrator may be named. See id,. The reason for this distinction was explained in Jones: . When the reference to arbitration rules or an arbitration forum is merely “an ancillary or logistical concern,”. the application of Section 5 to appoint a different arbitrator does not do violence to the intentions of the parties. By contrast, when the choice of arbitration forum was integral to the agreement, such that the parties would not have agreed-upon arbitration absent the selected forum, application of Section 5 to appoint a substitute arbitrator is more problematical. After all, despite.the “liberal federal policy favoring arbitration agreements,” the Court musfl.be mindful of the parties’ intentions as expressed in the terms, of an arbitration agreement, 684 F.Supp.2d 1161, 1166 (internal citations omitted). The “integral term vs. ancillary logistical concern” test articulated in Brown has been adopted by a large majority of jurisdictions and-is the generally accepted way to analyze the application of section 5. See Miller, 746 S.E.2d 680; Diversicare Leasing Corp. v. Nowlin, No. 11-CV-1037, 2011 WL 5827208 (W.D. Ark. 2011).It has not yet been adopted in Arkansas, but it is consistent with Arkansas contract law, in that it focuses on and requires a court to give effect to the intent of the contracting parties, .as. evidenced by the contract’s language. See Quarles, 2013 Ark. 228, 428 S.W.3d 437. It is also consistent with the terms of the FAA as well as United States Supreme Court precedent, which require courts to.enforce arbitration agreements according to their terms. See Volt Info., 489 U.S. 468, 109 S.Ct. 1248; Miller, 746 S.E.2d 680 (citing 9 U.S.C. §§ 2, 3, 4). In support of their argument that the designation of the NAF was merely an ancillary 1^logistical concern, the appellants contend that the arbitration agreement demonstrates that the ..parties’ paramount goal was to have their disputes resolved by arbitration rather than litigation. Conversely, Arnold argues that the parties did not have a general agreement to arbitrate; instead, they agreed to arbitrate only before the NAF. Therefore, she maintains,, the designation of the NAF is an- integral term of the arbitration agreement. The parties discuss the following factors in support of their respective positions. Express Applicability of the FAA .First, the appellants point out that both the arbitration agreement and the NAF Code expressly state that they are to be interpreted under the FAA, which would include section 5. According to the appellants, this suggests that, to the extent the parties intended to select the- NAF as arbitrator, they nonetheless- contemplated the possibility that the NAF would not arbitrate and that a substitute arbitrator would need to be named. I disagree with this -interpretation. . Many arbitration agreements provide that they áre to be governed by and interpreted under the FAA, but there is no evidence in this case to suggest that the parties considered the effect of section 5. Therefore, I would not consider the inclusion of this language persuasive on the issue of whether the designation of the NAF is an integral term. | ¡¡¿Allowance for Further Agreement of the Parties Second, the appellants aver that both the arbitration agreement and the NAF Code allow for further, agreement of the parties regarding the rules, procedures, and logistics of arbitration. Specifically, the arbitration agreement states that arbitration would occur “at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility.” Rule 1(A) of the NAF Code provides that parties may “agree to other procedures,” and Rules 48(D) and (E) state that parties “may seek legal and other remedies” in the event that they are denied the opportunity to arbitrate or in the event of cancellation of the Code. The appellants argue that this language demonstrates that the emphasis for the parties was arbitration instead of litigation, not arbitration conducted by a particular forum. I disagree. The arbitration agreement allows for further agreement of the parties only with respect to the place where arbitration would be conducted. Furthermore, the provisions of the NAF Code relied on by the appellants actually support Arnold’s position. They state as follows: D. The Director or Arbitrator may decline the use of arbitration for any dispute, controversy, Claim, Response or Request that is not a proper or legal subject matter for arbitration or where the agreement of the Parties has substantially modified a material portion of the Code. If Parties are denied. the opportunity to arbitrate a dispute, controversy or Claim before the Forum, the Parties may seek legal and other remedies in accord with applicable law. E. In the event of a cancellation of this Code, any Party may seek legal and other remedies regarding any matter upon which an Award or Order has not been entered.. As the Georgia Court of Appeals held in Miller, the portion of Rule 48(D) providing that the NAF may decline to arbitrate the parties’ claims if their agreement has “substantially modified a material portion of the Code” shows that, unless the NAF Code in its entirety applies to the arbitration, the parties’ agreement to arbitrate may be unenforceable. 746 S.E.2d 680. This language demonstrates that both the' NAF and its Code are ah essential part of the agreement to arbitrate. See id. In addition, “both Rules 48(D) and (E) make clear that if the parties cannot arbitrate pursuant to the NAF Code (which itself requires arbitration by the NAF), they'are not obligated to arbitrate in an alternate forum.” Id. at 687. Instead, they are free to seek legal remedies, which would include litigation. See id. The Eleventh Circuit has recently held similarly. See Beverly Enters. Inc. v. Cyr, 608 Fed.Appx. 924, 925 (11th Cir. 2015) (per curiam) (holding that the parties, by incorporating the NAF Code into their arbitration agreement, agreed that they could pursue legal and other remedies if the Code was can-celled, which “is what [the plaintiff] is doing”). I agree with the Miller and Cyr analysis. In essence, the parties agreed that they could pursue legal remedies if arbitration before the NAF became impossible. This is a significant consideration and severely undercuts the appellants’ argument that the parties’ overriding concern was arbitration rather than litigation. ' References to the NAF and Permissive/Mandatory Language Third, the appellants point to the specific language, used in the arbitration agreement’s designation of the NAF. Other jurisdictions have focused on the number of references to the designated arbitral forum in deciding whether that designation was an integral term of the ^arbitration agreement. For example, in both Meskill, 862 F.Supp.2d 966, and Diversicare, 2011 WL 5827208, a single mention of the NAF was considered evidence that the NAF was. not a primary concern of the parties when making the decision to arbitrate. See also Rivera,259 P.3d 803, 815 (“pervasive references” to the NAF in the arbitration-agreement compelled a conclusion that the parties intended for the NAF to be the exclusive arbitrator). The appellants assert that the arbitration agreement in this case barely mentions the NAF, but this argument overlooks the fact that the NAF Code is incorporated into the agreement. Consequently, the terms of the NAF Code became terms of the arbitration agreement itself, resulting in pervasive references to the NAF within the arbitration agreement.[5] Other jurisdictions have also focused on whether an arbitration agreement uses permissive or mandatory language, in selecting an arbitral forum or its rules. The arbitration agreement at issue here states that any disputes between the parties “shall be resolved exclusively by binding arbitration”.conducted in accordance with the NAF Code., (Emphasis added.) Several courts have held that this mandatory language, combined with the incorporation of the NAF Code, indicates that the parties did not have a general agreement to arbitrate but contracted to arbitrate only before the NAF. See, e.g., Miller, 746 S.E.2d 680. See also Rivera, 259 P.3d at 813 (“Mandatory, as opposed to permissive, contractual language further demonstrates that a specifically named arbitration provider is integral to the agreement to arbitrate.”); |gRI note the appellants’ contention that the word “exclusively” was intended to modify “shall be resolved,” not “in accordance with the National Arbitration Forum Code of Procedure.” I also note that the arbitration agreement uses permissive language in addition to the above-quoted mandatory language, stating in a footnote that “[cjlaims may be filed” at an NAF office or via its website or mailing address. (Emphasis added.) Thus, in my analysis, I do not give great weight to the permissive or mandatory character of the language used. However, I maintain that the numerous references to the NAF throughout the arbitration agreement support Arnold’s position that the designation of the NAF is an integral term. Implicit/Explicit Selection Fourth, the appellants contend that, if the parties had wished to qualify their agreement to arbitrate on the availability of the NAF, the agreement would have explicitly stated as much, rather than “obliquely” selecting the NAF Code. As discussed previously in this dissent, some courts have held that the designation of a particular arbitral forum’s rules of procedure is not synonymous with selecting that forum as arbitrator. In Dean v. Heritage Healthcare of Ridgeway, LLC, 408 S.C. 371, 759 S.E.2d 727 (2014), the South Carolina Supreme Court discussed, the distinction between arbitration agreements requiring a proceeding “administered by” the named forum and those requiring a proceeding conducted “in accordance with” the named forum’s rules. The court held that, absent other evidence to the contrary, a forum selection achieved by “in accordance with”' language is merely an ancillary logistical concern lMfor purposes of deciding whether section 5 applies, while one achieved with “administered by[5]’ language is an integral term. Id. The arbitration agreement in the instant case provides that arbitration is to be conducted “in accordance with” the NAF Code, which may be characterized as an implicit, rather than explicit, seléetion of the NAF pursuant to the Dean reasoning. However, there is no-indication in Dean that the rules of procedure referenced in the arbitration agreement were incorporated into the arbitration agreement. This is a critical distinction. As I have- stated, I would decline to follow those cases holding that an arbitration agreement invokes only the NAF Code but not the NAF itself when, in fact, the NAF Code is incorporated into the agreement and explicitly states that it may be administered only by the NAF. See, e.g., Robinson, 2015 WL 5684140; Meskill, 862 F.Supp.2d 966; Jones, 684 F.Supp.2d 1161. In my view, the better reasoning is that espoused by the Eleventh Circuit in Cyr, 608 Fed.Appx, 924, which involved an arbitration agreement identical to the one at issue here. As that court held, “the- agreement explicitly incorporates the NAF code, making the code an essential part of the agreement.” Id. at 925 (emphasis added). Severance Clauses Fifth, the appellants point out that both the arbitration agreement .and the NAF Code include severance provisions. Some courts have held that the existence of a severance clause in an arbitration agreement is “evidence that the parties did not intend for the entire agreement to fail if one portion was invalid or unenforceable” and therefore indicates that the | ^selection of an arbitral forum is not an integral term. Jones, 684 F.Supp.2d at 1168. See also Diversicare, 2011 WL 5827208. Other courts have criticized the reasoning in Jones on this point, stating that it “erroneously concluded that the severability clause trumped the plain language of the-contract designating the NAF as the exclusive forum to arbitrate claims.” Stewart, 9 A.3d at 220. See also Miller, 746 S.E.2d 680; Rivera, 259 P.3d 803. These cases focus on the intent of the parties and, specifically, the plain language of the arbitration agreement as the principal evidence of their intent. They con-cludé that a term intended to be integral to an agreement cannot be severed from the agreement. This is the better view, in my opinion, because it comports with our precedent requiring that we give effect to the intent of the parties as evidenced by the arbitration agreement itself. See, e.g., Quarles, 2013 Ark. 228, 428 S.W.3d 437. As the New Mexico Supreme Court explained, Given the number of references to the NAF as the only named arbitrator and the substantial reliance on the NAF Code of Procedure throughput the contract, we could not sever the unenforceable terms of the arbitration provisions without substantially rewriting the contract. Where the NAF .involvement in the arbitration provisions is so integral to the agreement itself, for us to change those core provisions would violate our duty to enforce the agreement according to its terms. ,. Rivera, 259 P.3d at 815. Accordingly, the severance clause in the instant arbitration agreement cannot. override, the fact that the selection of the NAF is . an integral part of the agreement. See Stewart, 9 A.3d 215; Wert 124 A.3d 1248. Ambiguity/Parol Evidence Finally, the appellants argue that, to the extent that the plain language of the arbitration | S1 agreement is ambiguous, the only other evidence in the record regarding the parties’ intent is Angela Marlar’s affidavit, which indicated that Courtyard Gardens did not intend to select the NAF as arbitrator, and which Arnold did not counter. First, I note that the circuit court did not find the arbitration agreement to be ambiguous. Second, cases emphasizing the plain language of the arbitration agreement as the sole evidence of the parties’ intent are more persuasive than cases placing “undue focus on extrinsic and/or collateral evidence of the parties’ intent.” Stewart, 9 A.3d at 221. This is because, under Arkansas contract law, the written agreement itself is the best evidence of the intent of the parties. See, e.g., Hurt-Hoover Invs., LLC v. Fulmer, 2014 Ark. 461, 448 S.W.3d 696. Therefore, I do not find the parol evidence to be a significant consideration in deciding whether section 5 applies. Considering all of these factors together, I am compelled to conclude that the designation of the NAF is an integral term of the parties’ arbitration agreement. I attach particular significance to the incorporation of the NAF Code into the agreement and the language of Rules 48(D) and (E), which essentially explain that the parties are not obligated to arbitrate in an alternate forum. My position may be summarized as follows: As the foregoing demonstrates, the Arbitration Agreement by its terms provides that the procedural law governing the arbitration proceedings would be the NAF Code; that the arbitrators would be members of the NAF, who are the only people authorized to administer and apply the NAF Code; and that in the absence of the NAF and/or the NAF Code as written, the parties would not be obligated to arbitrate their disputes but instead would be free to seek legal remedies. Accordingly, we find that the availability of.the NAF Code of Procedure and, ■ consequently, the availability of NAF as an arbitral forum, are integral to the Arbitration Agreement. Miller, 746 S.E.2d at 688. Because the designation of the NAF is an integral part of the arbitration agreement, section 5 does not apply. The unavailability of the NAF renders the parties’ . arbitration agreement impossible to perform; consequently, it is unenforceable. I acknowledge the liberal federal policy favoring arbitration agreements. See, e.g., Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, this policy does not allow us to rewrite the parties’ agreement; .rather, the law obligates us to enforce the plain terms of the contract into which the parties entered. See Miller, 746 S.E.2d 680 (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)). In accordance with this obligation, I would affirm the circuit court’s finding that the arbitration agreement in this case is impossible to perform. Wynne, J., and Special Justice Ryan Allen join in this dissent. . The same was true in Meskill, but that court seemed to ignore the incorporation provision. Unlike the majority,T would decline to do the . same.